1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

LAUSTEVEION JOHNSON,

          Plaintiff,

  v.

N. YOUNG, *et al.*,

          Defendants.

3:14-cv-00178-RCJ-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

9

10

11

12

13

14

15

      This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#36), plaintiff's opposition (#44), and defendants' reply (#58).  Also before the court is plaintiff's cross-motion for summary judgment (#56), defendants' opposition (#57), and plaintiff's reply (#59). Having thoroughly reviewed the record and papers, the court recommends that defendants' motion be granted in part and denied in part, and plaintiff's motion be denied in its entirety.

16

      **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

17

18

19

20

21

22

23

      Lausteveion Johnson ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Plaintiff is presently incarcerated at High Desert State Prison, but the alleged events giving rise to this case occurred at Ely State Prison ("ESP") in Ely, Nevada, where plaintiff was previously held.  Proceeding *pro se*, plaintiff asserts several civil rights claims against the following ESP and NDOC officials: ESP Law Library Supervisor N. Young ("Young"), ESP Warden Renee Baker ("Baker"), NDOC Director James Greg Cox ("Cox"), ESP Caseworker William Moore ("Moore"), and ESP Property Sergeant April Witter ("Witter").

24

25

26

27

      Except as noted, the following events are undisputed.  Plaintiff filed a petition for writ of habeas corpus in the Eighth Judicial District of the State of Nevada on May 17, 2013, challenging the parole board's decision to deny him parole.  The district court denied plaintiff's petition on June 14, 2013, and the Nevada Supreme Court affirmed the district court decision on February 12, 2014.

(#56 at 65.)  Plaintiff also filed a second post-conviction habeas petition in the Eighth Judicial District on July 26, 2013 (#36-10), and a supplemental petition on January 28, 2014.  (#36-11.)  The district court denied the petition, plaintiff appealed, and the Nevada Supreme Court affirmed on July 23, 2014.  (#36-12; #36-13; #36-14.)  Both the Nevada Supreme Court's orders of affirmance denied plaintiff relief on two grounds: (1) plaintiff's claims failed to challenge his judgment of conviction or the computation of his sentence, and were therefore not cognizable in a habeas petition; and (2) because parole is an "act of grace of the State," there is no cause of action when parole is denied. (#56 at 65; #36-14.)

Inmates who are housed in segregation units at ESP, as plaintiff was, are not allowed to physically visit ESP's law library.  Instead, inmates can request legal supplies or books through the inmate kite system and law library request forms.  (*See* #36-3.)  On January 1, 2014 plaintiff submitted twenty-five pages of legal documents to the ESP law library for copying.  Although plaintiff claimed in his amended complaint that the pages were never copied or returned (#21 at 3–4), he signed a receipt acknowledging completion of the request on January 6, 2014 (#36-2 at 2).

On February 3, plaintiff submitted twenty-one pages for of copy work (#21 at 4), intending to attach the documents as exhibits to his supplemental petition for habeas corpus (#56 at 3, 59). Plaintiff and defendants disagree as to whether the copy work was completed or returned.  In an effort to retrieve the copies, plaintiff submitted grievances on February 7, March 4, and April 30, 2014.  (*See* #36-3.)   For this set of copies defendants have not presented a receipt of acknowledgement, but the responses to plaintiff's grievances state, and Moore repeats in a declaration, that plaintiff told Moore on two occasions that all documents had been returned.  (*Id.*; #36-4 at 2.)  Plaintiff responds that Moore is lying or confused; if plaintiff told Moore that he had received his documents, he was referring to other sets he had sent to be copied.  (#59 at 1.)

On February 12, plaintiff submitted a request to copy forty-four pages; allegedly, the document was a lawsuit he had filed the previous year against ESP officials and which he wanted to send to an attorney.  (#21 at 3A.)   The next morning plaintiff filed an emergency grievance, concerned that Young would intentionally lose or destroy the documents.  (*Id.*; #56 at 77.)  On the

afternoon of February 13, Young filed a notice of charges ("NOC") against plaintiff regarding the February 12 copy request, stating that plaintiff "used several Law Library state/federal forms and wrote on the back of them without utilizing the forms themselves.  He has abused Law Library supplies as a result of not using the forms for their intended purpose per AR 722 and OP 714."  (#35-6 at 7.)  The forty-four pages were eventually returned to plaintiff, either on February 20 or 27 (*see* #36-7 at 6; #21 at 3A), but never copied.  On March 19 the charges against plaintiff were dismissed for lack of evidence as to whether the forms he used came from the law library or an outside source. (#36-5 at 4.)

In addition, plaintiff claims to have ordered a subscription to *Ebony* magazine in December 2012 or January 2013.  (#36-15 at 7; #21 at 3.)  Beginning in December 2013, having never received any issues, plaintiff submitted multiple grievances to ask what had happened to the issues, request compensation, and allege retaliation.  (#36-15 at 1–11.)

For these events, plaintiff brings three counts under the First and Fourteenth Amendments.  The District Court screened the complaint and allowed all three counts to proceed (#3).  This court subsequently granted plaintiff's motion to amend, which defendants did not oppose (#20).  Pursuant to the amended complaint, plaintiff alleges First Amendment retaliation claims in count I, First Amendment access to the court claims in count II, and Fourteenth Amendment due process claims in count III.  He seeks punitive and compensatory damages, costs, and declaratory and injunctive relief against each defendant in his or her individual and official capacities.

## II.       LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.    Factual disputes that are irrelevant or unnecessary will not be

counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. Where the parties file cross-motions for summary judgment, the court considers each party's evidence in separate determinations, *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011), as the required showings for the parties vary by the ultimate burden of proof. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine

dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

**A.   Evidence Considered**

Plaintiff filed his motion for summary judgment on March 30, 2015, but was unable to attach his exhibits "A" through "M" because he had reached his copy work limit.  On May 5, 2015 this court granted plaintiff a one-time copy work extension, cautioning him to choose his documents wisely as it would "not allow plaintiff to exceed the copy limit by more than $10.00 under any circumstance." (#49.)  In response to plaintiff's motion for reconsideration to ask for an increased extension (#53), the court ordered that plaintiff need not file documents duplicative of defendants' exhibits, and that by May 27, 2015, plaintiff identify and report the exhibits and exact number of pages that he still wished to file.  (#53.)

Plaintiff did not file a report with the court, but on June 1, 2015 he submitted a duplicate copy of his motion for summary judgment, along with exhibits A through M.  (#56 at 11–126.)  In addition, plaintiff attached exhibits "N" and "O" to his opposition.  (#44 at 16–31.)  Plaintiff cites to exhibits A through O throughout his motion, reply, and opposition.  However, several of the exhibits are just title pages, with no actual documents to follow, or appear to be missing pages.  (*See, e.g.*, #56 at 114, 116, 125, 126.)  Plaintiff now asks the court to consider all of the exhibits as evidence, including those not filed.  (#59 at 1–2.)  The court declines to do so.  Although the court must afford

1    a *pro se* litigant the "benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

2    (quotation omitted), it cannot speculate as to the contents of exhibits not before it.

3    **A.      Civil Rights Claims Under § 1983**

4            42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

5    deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067

6    (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).   The statute

7    "provides a federal cause of action against any person who, acting under color of state law, deprives

8    another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as

9    the procedural device for enforcing substantive provisions of the Constitution and federal statutes,"

10   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).   Claims under § 1983 require a plaintiff to

11   allege (1) the violation of a federally-protected right by (2) a person or official acting under the color

12   of state law.   *Warner*, 451 F.3d at 1067.   Further, to prevail on a § 1983 claim, the plaintiff must

13   establish each of the elements required to prove an infringement of the underlying constitutional or

14   statutory right.

15           In this case, defendants are each state prison officials acting within their respective capacities

16   under state law.   Plaintiff alleges violations of his constitutional rights.   Therefore, he has satisfied §

17   1983's threshold requirements and the court proceeds to analysis of his constitutional claims.

18   However, plaintiff's claims for damages against defendants in their official capacities must be

19   dismissed under the sovereign immunity doctrine.   *Brown v. Oregon Dep't of Corrs.,* 751 F.3d 983,

20   988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100

21   (1984)).   Thus, the court will consider the § 1983 claims only to the extent that he seeks declaratory

22   and prospective injunctive relief, as well as damages against defendants in their individual

23   capacities.   *See Thornton v. Brown*, 757 F.3d 834, 839 (9th Cir. 2013).

24   **B.      Count I: First Amendment Retaliation Claims**

25           Plaintiff filed numerous grievances and lawsuits while incarcerated at ESP, including the

26   emergency grievance filed on February 13, 2014 against defendant Young.   In his amended

27   complaint, plaintiff alleges that defendants responded to his grievances by taking the following

retaliatory actions: (1) Young withheld and refused to copy plaintiff's legal documents, and filed a NOC against plaintiff; (2) Baker, Moore, and Cox supported Young's retaliatory actions and created an environment of retaliation against plaintiff; and (3) Baker and Witter refused to issue plaintiff his eleven copies of *Ebony* magazine.  (#21 at 4–4A.)  Plaintiff and defendant each move for summary judgment as to the first two claims.[1]

It is well-established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567–68.

### 1.    Defendants' Motion for Summary Judgment

To prevail against defendants' motion for summary judgment, plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claims.  *Brodheim*, 584 F.3d at 1269 n.3.  In support of summary judgment, defendants argue that plaintiff cannot carry his burden with respect to elements two, four, and five in his claim against Defendant Young.  (#36 at 6–9.)  In addition, they maintain that Defendants Baker, Cox, and Moore were not personally involved in any of the alleged retaliatory actions, and so plaintiff's claim against them must also fail.  (*Id.* at 12–14.) The court addresses each argument in turn.

### a.    Defendant Young

### i.    Retaliatory Motive

To satisfy the second element of a retaliation claim, a plaintiff must show that his First Amendment activity was "the 'substantial' or 'motivating' factor behind the defendant's conduct."

---

[1] Neither plaintiff nor defendants' motions address plaintiff's allegations that Baker and Witter retaliated against him by withholding his magazine issues.  (*See* #36 at 5–9; #56 at 3–5.)  Accordingly, the claim moves forward.

*Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).   The evidence establishing such a motive is often circumstantial, *see id.*, but "mere speculation that defendants acted out of retaliation is not sufficient."   *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Defendants contend that Young either returned plaintiff's completed copy work, or that Young had legitimate reasons to refuse to copy or delay returning the documents. (#36 at 7.) They note that plaintiff's January 1, 2014 copies were returned to him on January 6, 2014, and plaintiff told Moore he had received his documents back "on at least two other occasions." (*Id.*) In addition, defendants cite to grievance responses telling plaintiff that his documents were held to investigate the NOC, and instances on February 23 and March 30, 2014 when plaintiff improperly included blank forms or unstamped/unsigned kites in his copy requests. (*Id.*) Each time, plaintiff was told he could resubmit the copy work by following instructions set forth in the responses to his grievances. (*Id.*; #36-9.) In other words, defendants argue that plaintiff's grievances and lawsuits played no role in Young's decision-making.

Plaintiff counters that it is irrelevant whether his later copy requests included blank forms and unsigned kites; his retaliation claims concern Young's actions with respect to documents plaintiff submitted on February 3 and 12. (#59 at 4.) As to those copy requests, plaintiff offers several pieces of evidence to suggest that Young's motives may not have been legitimate.

First, plaintiff offers an alternative explanation as to why he told Moore his copy work was completed: that from January through April of 2014, he had a "myriad" of active grievances, lawsuits, and habeas petitions, and that he was "constantly requesting and submitting legal documents to the law library to be copied." (#44 at 29.) He was also "continuously begging Moore to go and retrieve [his] documents," so it is logical that he told Moore at least twice he had received them back. (*Id.*) However, plaintiff was not referring to the February 3 or 12 copy requests. (*Id.*)

Second, plaintiff offers the timing of the NOC. Young filed the NOC against plaintiff one day after plaintiff requested that the law library copy a lawsuit he had filed against other ESP officials, and hours after plaintiff submitted an emergency grievance against Young. (#56 at 4–5.)

Timing alone does not suggest much—Young may well have filed the NOC as soon as she examined plaintiff's documents and discovered the alleged misuse of law library materials. However, "timing can properly be considered as circumstantial evidence of retaliatory intent." *Bruce v. YIst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)).

Third, plaintiff raises the fact that the NOC was dismissed because ESP officials could not determine whether plaintiff used ESP legal forms or ones provided by an outside source. (#44 at 4.) While also not conclusive, the dismissal tends to undermine defendants' contention that Young was acting in response to a clear rules violation.

Fourth, there is an issue of fact as to whether, at the time the NOC was filed, legal forms issued by ESP had "ESP law library" stamped on them. Plaintiff maintains that they did. (#44 at 6.) Young responded to plaintiff's interrogatory that the forms were not stamped (#56 at 15), while Cox responded that "records indicate that the ESP Law Library did temporarily stamp the bottom of forms . . . from approximately April 2014 through July 2014" (#56 at 35).[2] A juror could reasonably infer that the forms may have been stamped in February 2014, and if they were, that Young knew plaintiff had not violated any rules.

Finally, plaintiff describes statements made to him that, if true, tend to show that Young's issuance of the NOC was improperly motivated. According to plaintiff, on February 13, a correctional officer in the law library, Officer Moskoff, told him, "Young says she's going to write [you] up [for] filing the emergency grievance." (#44 at 31.) Defendant Moore allegedly had a similar message for plaintiff: "Young was supposed to write you up for trying to get those documents copied." (#44 at 29.)

Taken in the light most favorable to plaintiff, the evidence described above raises a triable issue of fact as to whether plaintiff's grievance- and lawsuit-filing was a substantial or motivating

---

[2] The court also notes that NDOC Administrative Regulation ("AR") 722, which plaintiff cites but failed to attach as an exhibit (*see* #56 at 9, 49–54), provides that "[a]ll materials belonging to the law library should be clearly stamped to identify them as State property or printed on pink paper." AR 722.01(12)(A).

factor behind Young's actions.  Defendants' evidence, which only tangentially addresses plaintiff's allegations, is insufficient to negate the effect.

### ii.   Chilling

Defendants next contend that plaintiff's First Amendment rights were not chilled because he continued to file grievances and lawsuits.  (#36 at 7–8.)  As defendants acknowledge, however, the Ninth Circuit does not require an inmate "to demonstrate a *total* chilling of his First Amendment rights to file grievances and pursue civil rights litigation in order to perfect a retaliation claim." *Rhodes*, 408 F.3d at 568 (emphasis in original).  Such a rule would "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."  *Id.* at 569.  The correct standard is an objective one, and considers "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Based on the record, the court cannot say as a matter of law that plaintiff fails to meet this objective standard.  Young's allegedly repeated refusals to copy or return documents, and the filing of a NOC, may have chilled a person of ordinary firmness in the exercise of their First Amendment rights.

### iii.   Legitimate Correctional Goal

Finally, defendants argue that even if plaintiff is able to satisfy the first four elements, his claim must fail because Young reasonably advanced a legitimate correctional goal by withholding or refusing to copy plaintiff's legal documents and by filing the NOC.  (#36 at 8–9.)  Plaintiff bears the burden of demonstrating the absence of legitimate correctional goals for the adverse actions alleged, and this court must "'afford appropriate deference and flexibility' to prison officials" in its evaluation of the correctional goals put forth.  *Pratt*, 65 F.3d at 806–07 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  The Ninth Circuit has also cautioned, however, against allowing prison officials to defeat a retaliation claim "simply by articulating a general justification for a neutral

process, when there is a genuine issue of material fact as to whether the action was taking in

retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289.

NDOC Administrative Regulation ("AR") 722 governs inmate law library use generally, and Operational Procedure ("OP") 714 governs the use of the law library at ESP.  In pertinent part, OP 714 provides:

> Copy machines located in Law Libraries for staff convenience are not to be used for any copy work other than for inmates, who have current litigation.  Only legal materials may be copied. . . .  Any inmate observed doing unauthorized copy work will immediately be suspended and a Notice of Charges will be written. . . .  Misuse of departmentally provided legal supplies shall result in disciplinary action.

(#36-6 at 9.)  Defendants describe OP 714 as "placing reasonable limitations on photocopies to ensure that resources are only used for current litigation and not for any other unauthorized purpose." (#36 at 9.)  As such, they argue that Young's actions "[p]reventing plaintiff from copying blank forms, submitting incomplete kites, and misusing law library forms [are] legitimately related to that goal." (*Id.*)

Conserving library resources and providing photocopies to inmates in an efficient manner may be legitimate correctional goals.  In light of the allegations and evidence presented, however, there is a genuine issue as to whether Young used ESP's photocopy policy as a means to retaliate against plaintiff's exercise of his First Amendment rights.  That a legitimate justification exists is, therefore, not enough to entitle defendants to judgment as a matter of law.

Plaintiff has carried his burden of demonstrating that material issues of fact exist with respect to elements two, four, and five of his retaliation claim against Defendant Young.  The court therefore recommends that defendants' motion for summary judgment be denied.

### b.    Defendants Baker, Moore, and Cox

Under § 1983, government officials cannot be held liable for the constitutional violations of their subordinates on the theory of respondeat superior.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1151 (9th Cir. 2011).  Rather, a plaintiff must plead that the official violated the Constitution through his or her own actions.  *Iqbal*, 556 at

676.  A supervisor may only be found liable if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  "[M]ere knowledge and acquiescence" in a subordinate's unconstitutional behavior is not enough.  *Iqbal*, 556 U.S. at 677.

Defendants move for summary judgment on the basis that Baker, Cox, and Moore were not personally involved in the decision to make or withhold copies of plaintiff's documents, and were named simply because they responded to plaintiff's grievances.  (#12.)  Defendants' responses to plaintiff's grievances generally support this position, as they fail to suggest greater participation in the law library's copy process.  (*See* #36-3 at 4, 7; #36-7 at 3, 9, 15.)  In addition, defendants have produced declarations by Moore and Baker outlining the extent of their involvement, or lack thereof.  (#36-4; #36-18.)

Plaintiff makes a variety of allegations regarding Baker, Cox, and Moore's role in responding to his grievances.  He argues that by denying his grievances, Baker, Cox, and Moore knew that Young was retaliating against plaintiff, and endorsed Young's actions by refusing to order her to return his legal documents.  (#44 at 11.)  In addition, plaintiff contends that defendants "agreed to and approved of Young's actions to write an NOC against plaintiff for plaintiff filing grievances against ESP officials and because he tried to get a lawsuit copied," citing (without page references) exhibits B, F, G, J, I, K, L, M, N, and O.  (#44 at 12.)  Finally, plaintiff alleges that Young had a history of "creating illegitimate reasons to deny inmates legal work," and that Baker, Cox, and Moore failed to respond appropriately as supervisors.  (#44 at 11.)

Based on the record before the court, a reasonable jury could not find that Baker, Cox, and Moore were personally involved in the alleged violation of plaintiff's First Amendment rights.  Despite plaintiff's use of such words as "approved," "refused to respond," and "encouraged" (*see* #44 at 11–12; #56 at 4), plaintiff has not presented any facts demonstrating that defendants participated beyond the grievance process.  In addition, plaintiff offers no evidence that Baker, Cox, and Moore were complicit in Young's purported history of illegitimately denying inmates' copy

-12-

work.  Rather, some of plaintiff's evidence cuts against the allegation.  He includes an exhibit with a sworn statement, grievance, and copy records from inmate Damon Campbell ("Campbell").  (#44 at 19–27.)  Campbell had grieved that Young denied his copy work for a reason that was contrary to ESP policies.  (*Id.* at 22–25.)  Baker responded, agreeing that Young had not acted in accordance with the relevant OP and AR and that Campbell's "legal copy work should not have been denied," and informing Campbell that Young had been advised to the effect.  (*Id.* at 21.)  To the extent that the incident is relevant to the case at bar, it tends to show that Baker took steps to ensure Young followed ESP procedures, and it undermines plaintiff's allegations of retaliatory intent.  Similarly, defendants' grievance responses and declarations indicate that they investigated the circumstances giving rise to plaintiff's grievances, reasonably concluded that all legal documents had been returned or were withheld for a legitimate reason, and responded appropriately.

Viewing the evidence in the light most favorable to plaintiff, defendants have carried their burden.  Even if plaintiff's allegations are enough to raise a "metaphysical doubt as to material facts," *Orr*, 285 F.3d at 783, they are insufficient to defeat defendants' motion for summary judgment.

### 2.      Plaintiff's Motion for Summary Judgment

As the court discussed above, plaintiff has raised triable issues of fact regarding Young's motives in refusing to copy or return plaintiff's legal documents and filing the NOC.  Plaintiff has not however provided a set of undisputed facts demonstrating that a reasonable jury could not find for Defendant Young.  In addition, the court finds that defendants are entitled to summary judgment with respect to the claim against Baker, Cox, and Moore.  Accordingly, plaintiff's motion for summary judgment should be denied as to count I.

### D.      Count II: First Amendment Access to the Courts Claims

Under count II, plaintiff alleges that defendants interfered with his constitutional right to access the courts in two ways.  The first concerns the same events giving rise to his retaliation claims; namely, that Young, Baker, Cox, and Moore impeded plaintiff's access to the courts by withholding and refusing to copy the legal documents he submitted on February 3, 2014, thereby

preventing plaintiff from submitting the documents in support of his supplemental petition for habeas corpus. (#56 at 8.) Second, plaintiff contends that Baker and Cox violated his constitutional right by maintaining an inadequate law library, and by denying him physical access to the law library or to law clerks who could help him prepare legal documents. (*Id.* at 6–8.) Together, plaintiff argues, defendants' actions caused the Eighth Judicial District Court and Nevada Supreme Court to dismiss his petition for writ of habeas corpus and the appeal. (*Id.*) As with count I, plaintiff and defendants each move for summary judgment.

Prisoners have a constitutionally guaranteed right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is not "an abstract, freestanding right to a law library or legal assistance," but rather requires that inmates be provided with the tools they need to challenge their sentences or conditions of their confinement. *Id.* at 351, 355. Prison officials are not required to follow any particular methodology to protect prisoners' constitutional right, nor must they enable a prisoner to "*litigate effectively* once in court." *Id.* at 354, 356–57 (emphasis in original).

Claims alleging denial of access to the courts may arise from the frustration or hindrance of an inmate's efforts to actively litigate a case (forward-looking claims) or from the loss of a meritorious suit that can no longer be tried (backward-looking claims). *Nev. Dep't of Corrs. v. Cohen*, 581 F. Supp. 2d 1085, 1091 (D. Nev. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002)); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating between claims involving inmates' right to affirmative assistance and those involving the right to litigate without interference by prison officials).

To state a viable backward-looking claim, as plaintiff attempts to do here, a plaintiff must show: "1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009); *see also Christopher*, 536 U.S. at 415 (reasoning that, with respect to the third element, there is "no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler

case"). Because the right of access to the courts "is ancillary to the underlying claim," the plaintiff must adequately articulate both the underlying claim and the remedy sought or risk dismissal. *See Christopher*, 536 U.S. at 415.

The first element, requiring the loss of a non-frivolous claim, is connected to the jurisdictional prerequisite that plaintiff demonstrate he or she suffered an actual injury. The actual injury requirement flows from the standing doctrine, and thus cannot be waived. *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349 n.1). To demonstrate actual injury in a denial of access case, plaintiff "might show, for example, that a complaint [plaintiff] prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he [or she] could not have known. Or that [plaintiff] had suffered arguably actionable harm that he [or she] wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Lewis*, 518 U.S. at 351. Arguing that a prison's law library is "subpar in some theoretical sense" will not suffice. *Id.*

### 1.   Defendants' Motion for Summary Judgment

Without directly addressing plaintiff's allegations regarding the adequacy of the law library or plaintiff's access to legal resources, defendants' argue that count II must be dismissed because plaintiff suffered no actual injury as a result of defendants' actions. (#36 at 10–11.) Plaintiff was able to file his habeas petition, appeal, and related pleadings in a timely manner, and both cases were decided on the merits. (*Id.*)

Plaintiff claims that he was injured when his petitions for writ of habeas corpus and the appeal were dismissed by the Eighth District Court and Nevada Supreme Court. Defendants are at fault, he argues, because they failed to copy and return documents plaintiff wished to submit in support of his habeas petition, they denied him physical access to the law library or law clerks, and they maintained an inadequate law library. (#21 at 5–6.) In his opposition and reply, plaintiff focuses in large part on these latter assertions regarding the constitutional adequacy of ESP's law library access and materials. (*See* #44 at 9–10; #59 at 5–6.) Because the court agrees that plaintiff

-15-

has suffered no actual injury, however, it has no jurisdiction to consider this aspect of plaintiff's First Amendment claim.

Plaintiff admits to filing and litigating numerous lawsuits while incarcerated at ESP.  (*See* #44 at 29.)  He appealed his May 17, 2013 and June 14, 2013 habeas petitions to the Nevada Supreme Court.  Each time, the Nevada Supreme Court reviewed the documents plaintiff submitted, found that his claims were not cognizable in a habeas petition, and affirmed the lower court decisions.  (#56 at 65; #36-14.)  Plaintiff does not allege that he was unable to file a complaint, defend against a charge, or meet court deadlines, and the inability to litigate as effectively as he might have liked is not an injury in and of itself.  *See Blanas*, 393 F.3d at 936; *Lewis*, 518 U.S. at 351 (rejecting the idea that inmates must be provided sufficient resources to litigate effectively once their claims are before a court).  Moreover, given the grounds for the Nevada Supreme Court decisions, there is no number of additional supporting documents that plaintiff could have submitted to change the outcome of his cases.

In sum, plaintiff cannot show that his injury would not have occurred but for defendants' actions.  Defendants are therefore entitled to summary judgment as to count II.

### 2.    Plaintiff's Motion for Summary Judgment

Plaintiff has failed to demonstrate that he suffered an actual injury as a result of defendants' actions, and the court recommends that summary judgment be granted in favor of defendants as to count II.  Accordingly, plaintiff's motion for summary judgment must be denied.

### E.    Count III: Due Process Claims

Plaintiff raises three due process claims under count III.  Plaintiff first alleges that in 2013, Witter and Baker deprived plaintiff of his eleven issues of *Ebony* magazine without due process of law.  (#21 at 6.)  The second and third claims both allege that Young deprived plaintiff of the legal documents he had submitted for copying, and that Cox, Baker, and Moore supported Young by refusing to order the copies be returned.  The second claim refers specifically to the twenty-five pages plaintiff submitted on January 1, 2014, and the third to the twenty-one pages submitted on February 3, 2014.  (*Id.*)

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving individuals of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Its protection extends to prisoners, who  have a protected interest in their personal property. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). But while prisoners retain rights under the Due Process Clause, those rights are "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556.

A prisoner may bring a § 1983 action for a violation of procedural due process, but the constitutional violation is the state's failure to provide due process when making the deprivation, rather than the deprivation itself.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Therefore, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate.  This inquiry . . . examine[s] the procedural safeguards built into the statutory or administrative procedure effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.* at 126.

Courts distinguish between unauthorized deprivations of property by prison officials and authorized, intentional deprivations.  Neither negligent nor intentional unauthorized deprivations are actionable under § 1983 so long as the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). In such cases, where the state cannot predict in advance that the loss will occur, the Supreme Court reasons that a pre-deprivation hearing "is not only impracticable, but impossible."  *Hudson*, 468 U.S. at 532 (quotation omitted).  On the other hand, if the deprivation is authorized and intentional, it is actionable under the Due Process Clause even where post-deprivation remedies exist.  *Id.* at 533. "Authorized" deprivations are those that are carried out pursuant to a state's established procedures, regulations, or statutes, *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982), as well as "deliberate, considered, planned, or prescribed" actions conducted under the apparent authority of such policies, *see Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

1    Defendants move for summary judgment on the grounds that plaintiff has failed to state a

2   cognizable due process claim under § 1983.  They argue that even if plaintiff ordered a subscription

3   to *Ebony*, the copies entered ESP, and defendants wrongfully withheld the copies—all facts that

4   defendants dispute—plaintiff's allegations amount to an unauthorized intentional deprivation of

5   property, for which state tort law provides an adequate post-deprivation remedy.  (#36 at 12.)

6   Defendants do not directly address whether plaintiff was denied due process by the deprivation of

7   his documents, but because their argument is broadly applicable to those claims the court will

8   construe it as doing so.  Plaintiff's motion for summary judgment does not address count III.  (*See*

9   #56.)

10       **1.    *Ebony* Magazine Subscription**

11       The court recommends that summary judgment be granted in favor of Witter and Baker with

12   regard to plaintiff's eleven issues of *Ebony* magazine.  As a threshold matter, plaintiff fails to

13   establish that he actually subscribed to *Ebony* and that a property interest in the eleven issues exists.

14   Where a plaintiff lacks a cognizable property interest in the matter allegedly deprived, no process is

15   due and no due process claim can arise.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1982).

16       A declaration by Witter explains the ESP mail room procedures.  (#36-17.)  Because of the

17   volume of bulk mail received at ESP, incoming magazines are not logged; mail room records are

18   therefore unavailable to verify whether any issues of *Ebony* arrived for plaintiff.  (#36-17 at 2.)

19   When inmates claim to have not received magazines, they are "told to contact the company to verify

20   that they did have a subscription for them, that it is being sent to the correct address and that it has

21   their name and inmate (back) number on the magazine."  (*Id.* at 3.)  The only indication that

22   plaintiff's issues did not arrive are grievances he filed approximately one year after allegedly placing

23   the subscription.  (#36-15 at 2–9; #36-17 at 2.)  At that time, plaintiff was told that the mail room

24   had no magazine issues for him.  (#36-15 at 4.)

25       Plaintiff claims to have verified his subscription and cites to exhibit M, titled "Ebony

26   Letters," as proof.  (#44 at 11, 16.)  However, exhibit M is blank.  (*See* #56 at 126.)  The only other

27   evidence he offers are the repeated assertions of his complaint and other pleadings stating that he

ordered the subscription and that Witter and Baker withheld his issues.  (*See, e.g.*, #21 at 6 ("Witter and Baker violated the 14th Amendment by refusing to issue plaintiff any of his 11 issues of *Ebony* magazine in 2013."); #44 at 11, 31 ("I did order *Ebony* magazine and did not receive any of the 11 issues because they were not issued to m[e] by Witter.").)  Based on the record, plaintiff has not presented evidence upon which a reasonable jury could rely to find that he was deprived a property interest.

Assuming *arguendo* that plaintiff did subscribe to *Ebony* magazine, and that ESP officials withheld the eleven issues, plaintiff still fails to present a cognizable claim under § 1983.  Plaintiff argues that the defendants' taking of his magazine subscription was an authorized deprivation because it was ordered by Witter, "a high ranking officer."  (#44 at 11.)  Here, plaintiff may misunderstand the court's precedent.  An action is not necessarily "authorized" because it was carried out by an official with authority; rather, the authorization must come from established procedures, regulations, or statutes.  *See Logan*, 455 U.S. at 435–36; *Piatt*, 773 F.2d at 1036.  Plaintiff does not allege or present any evidence showing that defendants acted pursuant to NDOC or ESP policies authorizing the withholding of magazines.  The deprivation would therefore be characterized as a negligent or intentional deprivation, and is not actionable if state law provides a meaningful remedy.  *Hudson*, 468 U.S. at 533.  Because such a remedy is available under Nevada state law, *see* Nev. Rev. Stat. §§ 41.031, 41.0322, plaintiff's claim cannot proceed in federal court.  Summary judgment in favor of defendants Witter and Baker is appropriate.

### 2.     January 1, 2014 Copies

Defendants are also entitled to summary judgment as to the twenty-five pages of legal documents plaintiff submitted for copying on January 1, 2014.  Defendants produced the copy work request, which is dated January 1 at the top.  (#36-2.)  Plaintiff's signature appears at the bottom, next to the statement "I RECEIVED THE ABOVE LEGAL COPY WORK, AND VERIFY IT IS COMPLETE," and the date January 6, 2014.  (*Id.*)  Because plaintiff does not contend that that the document or signature is invalid (#59 at 4), the court assumes that no deprivation occurred.

### 3. February 3, 2014 Copies

Taken in the light most favorable to plaintiff, the record suggests that defendants may have withheld the documents plaintiff submitted on February 3, 2014. Plaintiff submitted numerous grievances, and defendants' sole evidence that the documents were returned is Moore's assertion that plaintiff said he had received them. (*See* #36 at 3; 36-4 at 2.) Nevertheless, plaintiff fails to state a claim that is cognizable under the Due Process Clause.

Plaintiff seems to describe the deprivation of his February 3 documents as an authorized, intentional taking because Young was supported by her supervisors, Baker, Cox, and Moore, who denied plaintiff's grievances to retrieve his documents. (#21 at 6.) However, plaintiff again fails to describe how the deprivation was authorized by any established prison policies; instead, he accuses defendants of disregarding prison policies. For example, plaintiff quotes OP 714 to emphasize that established ESP procedure does not authorize prison officials to withhold or refuse to copy inmates' legal documents (#44 at 13), and goes on to state that "Young was NOT justified under OP 714 to refuse to copy [plaintiff's] legal documents, to prolong the return of his documents, to refuse to return his documents, or to write a NOC against plaintiff for filing a grievance . . . ." (*Id.* at 13–14.) Similarly, he states elsewhere that "according to [defendants'] own ARs and OPs . . . they are suppose[d] to keep the signed copy request form to prove that they returned the inmates' mail. And [] the ARs and OP prove that they were required to copy [plaintiff's] legal documents . . . ." (#59 at 4.)

Accordingly, the alleged deprivation of the documents plaintiff submitted on February 3, 2014 must be characterized as an unauthorized deprivation. Because Nevada law provides an adequate post-deprivation remedy, *see* Nev. Rev. Stat. §§ 41.031, 41.0322, defendants are entitled to judgment as a matter of law. The court recommends that summary judgment be granted in defendants' favor as to all claims in count III.

### F. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*,

465 U.S. at 100).  State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine.  More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established."  *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).  A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm.  *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case.  *Pearson*, 555 U.S. at 240–42.

"[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."  *Pratt*, 65 F.3d at 806 (quoting *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).  Accordingly, the court rejects defendants' argument that Young is entitled to qualified immunity.  Because the court recommends that defendants' motion for summary be judgment be granted as to the remaining claims and defendants, it need not reach whether they would be entitled to qualified immunity.

## VI.     CONCLUSION

Based upon the foregoing, the court concludes that defendants are entitled to partial summary judgment.  With respect to count I, plaintiff has raised genuine issues of material fact as to whether defendant Young acted with a retaliatory motive when she refused to return or copy plaintiff's legal documents, and in filing charges against plaintiff following his February 12, 2014 copy request; these issues preclude summary judgment on plaintiff's retaliation claim against defendant Young. However, plaintiff's claim that defendants Baker, Cox, and Moore participated in Young's alleged retaliatory acts is unsupported, and summary judgment is appropriate.  Defendants are entitled to summary judgment on count II because plaintiff has failed to show that he suffered an actual injury,

as required in First Amendment access to the courts claims.  Finally, defendants are entitled to summary judgment on count III because any deprivations that occurred were unauthorized; therefore, post-deprivation relief provided by the State of Nevada shields defendants from constitutional claims.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#36) be **GRANTED** as to plaintiff's First Amendment retaliation claim against defendants Baker, Cox, and Moore; First Amendment access to the courts claims; and Fourteenth Amendment due process claims, but **DENIED** as to plaintiff's First Amendment retaliation claim against defendant Young.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for summary judgment (#56) be **DENIED** in its entirety.


**DATED:**  October 8, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**